O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CAROLYN MARTINEZ, | ) | NO. EDCV 11-00539-MAN |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint on April 11, 2011, seeking review of the denial of plaintiff's application for supplemental security income ("SSI").  On May 2, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on December 5, 2011, in which:  plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

1

2

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On August 23, 2007, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 9.)  Plaintiff, who was born on May 1, 1965 (A.R. 17),[1] claims to have been disabled since December 1, 2006 (A.R. 9), due to arthritis, back problems, depression, and vision problems (A.R. 78, 86).  Plaintiff has past relevant work experience as a "jogger," material handler, tamale maker, and companion.  (A.R. 17.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 9, 78-82, 86-90), plaintiff requested a hearing (A.R. 91).  On January 22, 2010, plaintiff, who was represented by counsel, appeared and testified at a video hearing before Administrative Law Judge John R. Price (the "ALJ").[2]  (A.R. 9, 19-71.)  Lay witness Anthony Torres and vocational expert Stephen P. Davis also testified. (*Id.*)  On February 10, 2010, the ALJ denied plaintiff's claim (A.R. 9-18), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful

---

[1]   On the date the application was filed, plaintiff was 42 years old, which is defined as a younger individual.  (A.R. 17; *citing* 20 C.F.R. § 416.963.)

[2]   As noted in the ALJ's decision, plaintiff "appeared in San Bernardino, California [for the video hearing], and [the ALJ] presided over the [video] hearing from San Francisco, California.  (A.R. 9.)

activity since August 23, 2007, her application date. (A.R. 11.)  The ALJ determined that plaintiff has the following severe impairments: right-eye blindness; bilateral early cataracts; moderate degenerative disc disease of the cervical spine; obesity; major depression; and post-traumatic stress disorder.  (*Id.*)  The ALJ also determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  (A.R. 12.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), with the following exceptions:

> [plaintiff] can lift and carry ten pounds frequently and twenty pounds occasionally, walk and stand for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  [Plaintiff] should not engage in work that requires good visual acuity due to blindness in the right eye and the associated lack of depth perception, no work around hazards such as dangerous heights and machinery, and she can perform simple, repetitive one to two-step job tasks with no interaction with the general public, occasional interaction with co-workers, and little to no change in the work routine from day to day.

(A.R. 14.)

3

Based on his RFC assessment, the ALJ determined that plaintiff is unable to perform her past relevant work. (A.R. 17.) However, having considered plaintiff's age, education,[3] work experience, and RFC, the ALJ found that jobs exist in the national economy that plaintiff could perform, including table worker and coater, brake linings.[4] (A.R. 17-18.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since August 23, 2007, the date her SSI application was filed. (A.R. 18.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v.

---

[3]    The ALJ found that plaintiff has a limited education and is able to communicate in English. (A.R. 17.)

[4]    According to the Dictionary of Occupational Titles ("DOT"), a "coater, brake linings"

[t]ends machine that automatically coats inside of brake lining with adhesive preparatory to bonding lining to brake shoe[;] [s]tarts machine and conveyor and feeds brake lining into machine to obtain sample for approval by supervisor[;] [f]eeds brake linings into machine and observes coating for conformance to specifications as linings are discharged onto conveyer[; and] [p]laces linings with coating defects aside for disposal.

DOT § 574.685-010.

4

Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ did not properly:  (1) consider the November 9, 2007 opinion of State agency physician Dr. H. M. Skopec (Joint Stipulation ("Joint Stip.") at 2-5); and (2) assess plaintiff's ability to perform other work in the economy (*Id.* at 3, 7-9).

**I.   The Alleged Failure To Consider Properly The November 29, 2007 Opinion Of State Agency Physician H. M. Skopec, M.D. Does Not Warrant Remand.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(d).

In evaluating opinion evidence, an ALJ is required to consider the opinions and findings of State agency medical consultants.  20 C.F.R. § 416.927(f)(2)(I).  Further, "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency [consultant]."  20 C.F.R. § 416.927(f)(2)(ii); *see* SSR 96-6p (1996), 1996 SSR LEXIS 3, at *5, 1996 WL 374180, at *2 (stating that an ALJ "may not ignore" the opinions of State agency medical consultants "and must explain the weight given to

6

these opinions in their decision").

In determining a claimant's RFC, an ALJ will consider all the relevant evidence in the record. 20 C.F.R. § 416.945(a). In so doing, the ALJ will consider all claimant's medically determinable impairments, including those that are not "'severe.'" *Id.*

On November 29, 2007, Dr. Skopec, a State agency medical consultant, completed a nonexamining, consultative review of plaintiff's medical record. (A.R. 288.) As part of his consultative review, Dr. Skopec completed a Psychiatric Review Technique form in which he opined that plaintiff has: (1) mild restrictions of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. (A.R. 283.)

In addition, Dr. Skopec completed a Mental Functional Capacity Assessment form also dated November 29, 2007 ("Assessment"). (A.R. 286-88.) The Assessment consists of three sections. In Section I of the Assessment, entitled "Summary Conclusions," the evaluator is directed to record "summary conclusions derived from the evidence in file" with respect to "the individual's capacity to sustain [each mental] activity over a normal workday and workweek, on an ongoing basis." (A.R. 286.) The Assessment instructs the evaluator, however, to record a "[d]etailed explanation of the degree of limitation for each [of the four categories of mental functioning], as well as any other assessment information [he/she] deem[s] appropriate, . . . in Section III (Functional Capacity

7

Assessment)."  (*Id.*)

Section II of the Assessment, entitled "Remarks," is to be completed by the evaluator when there is insufficient documentation to perform an accurate functional capacity assessment.  (A.R. 286-87.) Assuming there are no such deficiencies, the evaluator completes Section III of the Assessment, entitled "Functional Capacity Assessment."  In it, the evaluator explains his or her summary conclusions in narrative form.  (A.R. 288.)  Section III is to be filled out "only after the Summary Conclusion section has been completed."  (*Id.*; emphasis omitted.)

As explained in the Social Security Program Operations Manual System ("POMS"),[5] "[t]he purpose of [S]ection I ('Summary Conclusion') . . . is chiefly to have a worksheet to ensure that the [evaluator] has considered each of these pertinent mental activities and the claimant's . . . degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis." POMS DI 25020.010(B)(1).  Significantly, the POMS notes that "**[i]t is the narrative** written by the [evaluator] **in [S]ection III** ('Functional Capacity Assessment') **that adjudicators are to use as the assessment of RFC.**"  (*Id.*)  Accordingly, the "[a]judicators must take the RFC assessment **in [S]ection III** and decide what significance the elements discussed in this RFC assessment have in terms of the [claimant]'s ability to meet the mental demands of past work or other work."  *Id.*

_____

[5]   The Ninth Circuit has recognized that while the POMS "does not have the force of law," it is "persuasive authority."  Warre v. Comm'r of SSA, 439 F.3d 1001, 1005 (9th Cir. 2006).

8

1   (emphasis in original).

2

3       In the "Sustained Concentration and Persistence" portion of Section
4   I, Dr. Skopec found plaintiff to be "Moderately Limited," *inter alia*,[6]
5   in her ability to perform activities within a schedule, maintain regular
6   attendance, and be punctual within customary tolerances.  (A.R. 286.)
7   After completing Section I and finding no deficiencies in Section II,
8   Dr. Skopec completed Section III of the Assessment.  Dr. Skopec opined,
9   *inter alia*, that plaintiff "can sustain simple repetitive tasks with
10  adequate pace and persistence, can adapt and relate to co-workers and
11  supervisors but likely cannot work with the public."  (A.R. 288.)

12

13      Contrary to plaintiff's contention, the ALJ committed no reversible
14  error in failing to refer specifically to Dr. Skopec's finding that
15  plaintiff is moderately limited in her ability to perform activities
16  within a schedule, maintain regular attendance, and be punctual within
17  customary tolerances.  As an initial matter, the fact that the ALJ did
18  not refer to the above noted limitations does not mean the ALJ failed to
19  consider such evidence.  *See* Black v. Apfel, 143 F.3d 383, 386 (8th Cir.
20  1998)(noting that "[a]n ALJ's failure to cite specific evidence does not
21  indicate that such evidence was not considered").  In fact, in his
22  decision, the ALJ twice referred to Dr. Skopec's November 2007
23  Assessment and gave it "[s]ome weight."  (A.R. 12-13, 16.)  For example,
24  in assessing whether plaintiff's impairments met or equaled one of the
25  listed impairments, the ALJ noted that Dr. Skopec opined "that

26  _____

27      [6]   Dr. Skopec found plaintiff to be "Moderately Limited" in other
28  mental activities; however, plaintiff has not claimed that the ALJ
    committed any error in considering these mental limitations.

[plaintiff] had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation." (A.R. 12-13.) The ALJ also referred to Dr. Skopec's mental RFC assessment for plaintiff in which Dr. Skopec opined that plaintiff could "sustain simple repetitive tasks with adequate pace and persistence, and could adapt and relate[] to co-workers and supervisors but that she likely could not work with the public." (A.R. 16.)

Further, the ALJ properly accounted for Dr. Skopec's above noted moderate limitations in Section I ("Summary Conclusions") by "agree[ing]" with, *inter alia*, Dr. Skopec's mental RFC for plaintiff contained in Section III and finding that plaintiff "can perform simple, repetitive one to two-step job tasks with no interaction with the general public." (A.R. 16.) As noted *supra*, the POMS specifically instructs that Section III, as opposed to Section I, of the Assessment is to be used by the ALJ in assessing plaintiff's RFC. As such, the ALJ properly relied upon Dr. Skopec's Section III narrative interpretation of his Section I summary conclusions.

Accordingly, for the aforementioned reasons, the ALJ committed no reversible error in considering the opinion of Dr. Skopec.

**II.** **Remand Is Necessary So That The ALJ Can Properly Determine What Work, If Any, Plaintiff Can Perform.**

Plaintiff claims that the ALJ committed several errors, as discussed in detail *infra*, in determining that plaintiff has the ability

to perform work other than her past relevant work.

At step five of the sequential evaluation, the burden shifts from the claimant to the ALJ to prove that, based on the claimant's RFC, age, education, and past work experience, the claimant is able to perform work that exists in significant numbers in the national economy. Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996); 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c), 416.964. The ALJ can meet his burden at step five by either taking the testimony of a vocational expert or by referring to the Grids. See Lounsbury v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006); see also Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999)(describing how the vocational expert's testimony and the Grids are used at step five). If the ALJ chooses, as in this case, to rely upon the testimony of a vocational expert, the hypothetical posed to the vocational expert must be "accurate, detailed, and supported by the medical record." Id. If the hypothetical presented to the vocational expert does not reflect all of the claimant's limitations and/or is not supported by evidence in the record, the "[vocational] expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(citation and internal quotations omitted); Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

The ALJ has an affirmative responsibility to ask whether a conflict exists between the testimony of a vocational expert and the DOT. SSR 00-4p, 2000 SSR LEXIS 8, at *9, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). If there is a conflict

between the DOT and testimony from the vocational expert, an ALJ may accept testimony from a vocational expert that contradicts the DOT, but "the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 846 (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).   The ALJ must resolve any conflict by determining whether the vocational expert's explanation is reasonable and provides sufficient support to justify deviating from the DOT.   SSR 00-4p, 2000 SSR LEXIS 8, at *9, 2000 WL 1898704, at *4; Massachi, 486 F.3d at 1153.   An ALJ's failure to do so, however, can be harmless error when there is no conflict or the vocational expert provides a basis for relying on his or her testimony rather than on the DOT.   Id. at 1154 n.19.

1.   Dr. Andrea S. Ching's Opinion

Plaintiff claims that the ALJ erred at step five in failing to include in his assessment of plaintiff's RFC the finding by Dr. Ching that plaintiff had "poor fix [and] follow [and] loses fixation in the [illegible] gaze / r[igh]t gaze" (A.R. 273) -- the inclusion of which may have affected the ALJ's determination that plaintiff can perform "other work" (Joint Stip. at 7).

On November 15, 2007, Dr. Ching, an opthamologist, examined plaintiff.   (A.R. 273, 397-98.)   In a letter dated November 16, 2007, Dr. Ching detailed the results of her examination of plaintiff.   Dr. Ching stated that plaintiff's:  (1) "visual acuity with no correction is hand motion on the right eye and 20/40 on the left eye"; (2) "[c]onfrontational visual fields are restricted on the right eye"; (3)

"cornea of the right eye shows an epithelial[,] anterior stromal scar[, and] corneal haze"; and (4) "lenses show early cataracts bilaterally." (A.R. 397.)  Based on these examination findings, Dr. Ching opined that plaintiff has:  (1) a "[c]orneal scar of the right eye with a possible history of a corneal ulcer"; (2) "[d]ry eye syndrome"; (3) [e]arly cataracts [in] both eyes"; and (4) a "[h]istory of amblyopia [in her] right eye."  (*Id.*)

Contrary to plaintiff's contention, the ALJ did not commit reversible error by not including Dr. Ching's findings regarding plaintiff's ability to fixate and follow in his RFC assessment of plaintiff. As an initial matter, the ALJ discussed Dr. Ching opinion in his decision.   The ALJ noted, for example, that Dr. Ching found plaintiff to have "visual acuity with no correction of hand motion in the right eye and 20/40 in the left eye."  (A.R. 16.)   The ALJ also noted Dr. Ching's opinion that plaintiff has "[a] corneal scar of the right eye with a possible history of a corneal ulcer, dry eye syndrome, early cataracts in both eyes, and a history of amblyopia in the right eye."  (*Id.*)

Further, while it is true that the ALJ did not refer specifically to Dr. Ching's finding regarding plaintiff's fixation and follow, the ALJ clearly recognized plaintiff's visual problems in her right eye as evidenced by his finding that plaintiff "should not engage in work that requires good visual acuity due to *blindness in the right eye* and the associated lack of depth perception." (*Id.*; emphasis added.)  Indeed, as the Commissioner properly notes, by finding plaintiff to be blind in her right eye -- a finding which exceeds the limitations found by Dr.

13

Ching, the ALJ gave plaintiff every benefit of the doubt.

Accordingly, the ALJ committed no reversible error in considering the opinion of Dr. Ching.

2. <u>Visual Acuity</u>

Plaintiff claims that the ALJ erred at step five in finding that she could perform the jobs of table worker and coater, because such jobs would require plaintiff to have near visual acuity, and the ALJ's assessment of plaintiff's RFC is "ambiguous as to whether [plaintiff]'s visual acuity is near[, as opposed to far,] visual acuity." (Joint Stip. at 8.)

At the January 22, 2010 administrative hearing, the ALJ asked the vocational expert whether a hypothetical individual who was limited, as is plaintiff, to, *inter alia,* no "work that requires good visual acuity due to blindness in the right [eye]," could perform plaintiff's past relevant work. (A.R. 64.) Before answering the ALJ's question, the vocational expert asked the ALJ to clarify what he meant by "visual acuity." *Id.* The ALJ stated that "[t]he record shows limitations in the visual fields and so both considering that and probably depth perception as well." (A.R. 65.) In response, the vocational expert stated that he thought that plaintiff's depth perception would be affected. *Id.* The vocational expert then asked the ALJ whether plaintiff could "see effectively an object at 20 inches or less." *Id.* The ALJ responded that "[w]ith the left eye [plaintiff] has adequate vision to do that." *Id.* The vocational expert then asked whether

1  plaintiff could read newspapers at 20 inches or less.  *Id.*  The ALJ

2  responded that he did not "have any evidence that shows otherwise."  *Id.*

3

4      Taking into account the ALJ's responses to his questions, the

5  vocational expert stated "[o]kay so it's really [a] depth perception

6  [issue] we're talking about."  (A.R. 65.)  Accordingly, based upon his

7  understanding of plaintiff's visual problems, the vocational expert

8  testified that plaintiff could perform other jobs in the national

9  economy, including the jobs of table worker and coater.  (A.R. 66.)  The

10  vocational expert further testified that his testimony was consistent

11  with the DOT.  (A.R. 67.)

12

13      In his assessment of plaintiff's RFC, the ALJ found that plaintiff

14  "should not engage in work that requires good visual acuity due to

15  blindness in the right eye and the associated lack of depth perception."

16  (A.R. 14.)  The ALJ further found, based on his consideration of, *inter*

17  *alia*, plaintiff's RFC assessment and the vocational expert's testimony,

18  that plaintiff could perform other jobs that exist in significant number

19  in the national economy, including table worker and coater.  (A.R. 17-

20  18.)

21

22      While it is true, as plaintiff claims, that the ALJ did not specify

23  in his RFC assessment whether plaintiff has near and/or far visual

24  acuity problems, any error committed by the ALJ in failing to do so was

25  harmless.  First, the ALJ properly relied upon the vocational expert's

26  testimony that plaintiff's "visual acuity" problem was really a depth

27  perception problem due to blindness in her right eye.  <u>Tommasetti v.</u>

28  <u>Astrue</u>, 533 F.3d 1035, 1042 (9th Cir. 2008)(noting that an ALJ "may rely

on expert testimony which contradicts the DOT [so long as] the record contains persuasive evidence to support the deviation")(citations omitted); *see* Massachi, 486 F.3d at 1154 n.19 (noting that there is no reversible error if there was no conflict or the vocational expert "provided sufficient support for her conclusions so as to justify any conflicts"). As neither the table worker job nor the coater job has a depth perception requirement, any error committed by the ALJ was harmless.

Second, plaintiff does not allege, and the Court cannot find, that plaintiff has any near visual acuity problems in her left eye. In fact, as the Commissioner properly notes, Dr. Ching found that plaintiff's vision in her left eye, without any corrective lens, is 20/40 (A.R. 397), and plaintiff testified that she can read with her left eye when she wears glasses (A.R. 50). In addition, in responding to the vocational expert's questions regarding plaintiff's visual acuity, the ALJ stated that plaintiff could see an object at 20 inches or less and that there was no evidence to show that plaintiff could not read a newspaper at a distance of 20 inches or less. Significantly, no objections were made in response to the ALJ's statements. Accordingly, in view of the fact that plaintiff neither alleges nor appears to have any near visual acuity problems in her left eye that cannot be corrected with prescription lens, any error committed by the ALJ with respect to plaintiff's visual acuity was harmless.[7]

_____

[7]   As this case is being remanded for the reason discussed *infra*, the ALJ should, in an abundance of caution, specify in his RFC assessment and subsequent question(s) to the vocational expert plaintiff's exact visual acuity problems, and/or lack thereof, with respect to her right and left eyes.

     3.   <u>Reasoning Level 2 And One- To Two-Step Job Tasks</u>

Plaintiff claims that the ALJ erred at step five in finding that plaintiff could perform the jobs of table worker and coater, because, according to the DOT, such jobs would require plaintiff to function at reasoning level 2 -- a reasoning level which plaintiff contends is inconsistent with the ALJ's RFC assessment limiting plaintiff to simple, repetitive one- to two-step job tasks.

"The DOT job descriptions include a 'General Educational Development' ('GED') definition component which 'embraces those aspects of education (formal) and (informal) which are required of the worker for satisfactory job performance.'" <u>Grisby v. Astrue</u>, U.S. Dist. LEXIS 5465, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010). The GED is comprised of three scales, including a scale for "Reasoning Development." *Id.* The GED reasoning development scale ranges from Level 1 (low) to Level 6 (high). *Id.* Levels 1 and 2 are defined as follows:

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

///
///
///

17

LEVEL 2


Apply commonsense understanding to carry out detailed but
uninvolved written or oral instructions.  Deal with problems
involving a few concrete variables in or from standardized
situations.


DOT, Appendix C, 1991 WL 688702 (1991).


Based on the vocational expert's testimony at the January 22, 2010
administrative hearing, the ALJ determined that plaintiff could perform
the occupations of table worker and coater, both of which require a
reasoning level of 2 according to the DOT.  (A.R. 17-18; DOT § 739.687-
182 [table worker]; DOT § 574.685-010 [coater, brake linings].)
However, although the ALJ relied upon the vocational expert's statement
that his testimony was consistent with the DOT, there appears to be an
inconsistency between the ALJ's RFC assessment, which limits plaintiff
to simple, repetitive one- to two-step job tasks, and his finding that
plaintiff can perform jobs which, according to the DOT, require a
reasoning level of 2.


As relevant here, while the "weight of prevailing authority
precludes a finding of any inconsistency between a reasoning level of
two and a mere limitation to simple, repetitive tasks or unskilled
work," Coleman v. Astrue, 2011 U.S. Dist LEXIS 19892, at *12-*14 (C.D.
Cal. Feb. 28, 2011)(citing cases in which the courts have rejected the
argument that a limitation to simple, repetitive tasks is inconsistent
with level two reasoning level), the same cannot be said when the ALJ

18

includes an additional restriction to one- to two-step job tasks, *see* Cardozo v. Astrue, 2011 U.S. Dist. LEXIS 33821 (C.D. Cal. Mar. 29, 2011)(citing cases in which courts found a limitations to one- or two-step instructions to be consistent with reasoning level 1 jobs).  That is because the additional language used by the ALJ -- *to wit,* limiting plaintiff to one- to two-step job tasks -- parallels the language contained in the description of reasoning level 1, as opposed to that contained in reasoning level 2.  *See* Coleman, 2011 U.S. Dist LEXIS 33821, at *14.

Accordingly, because a potential conflict exists between the ALJ's determination that plaintiff can perform one- to two-step job tasks and his finding that plaintiff can perform jobs which, according to the DOT, require level 2 reasoning -- a conflict which the vocational expert neither identified nor explained -- the Court cannot determine whether substantial evidence supports the ALJ's ultimate determination that plaintiff can perform other work that exists in significant numbers in the national economy.  Remand, therefore, is appropriate.

4.  Dangerous Machinery

Plaintiff claims that the ALJ erred at step five in finding that she could perform the job of table worker, because it would require plaintiff to work with machinery, and the ALJ's assessment of plaintiff's RFC allegedly precludes plaintiff from working around machinery.  (Joint Stip. at 8.)

In his assessment of plaintiff's RFC, the ALJ limited plaintiff to

*inter alia*, "no work around hazards such as dangerous heights and machinery." (A.R. 14.)  Critical to the resolution of this alleged claim of error is whether the adjective "dangerous" modifies the word "machinery."  As the Commissioner properly notes, at the January 22, 2010 administrative hearing, the ALJ asked the vocational expert whether a hypothetical individual with plaintiff's limitations and restrictions, including, *inter alia*, a preclusion from working "around hazards such as heights and *dangerous machinery*," could perform plaintiff's past relevant work.  (A.R. 64; emphasis added.)  At first blush, it would appear that the ALJ intended the adjective "dangerous" to modify the word "machinery."  However, in a later hypothetical to the vocational expert, the ALJ asked the vocational expert whether a hypothetical individual who was limited to, *inter alia,* "no work around hazards such as heights and machinery," could perform other work in the national economy.  (A.R. 66.)  In this hypothetical question, the ALJ made no mention of the word "dangerous."  As such, there appears to be some question as to whether the ALJ intended to preclude plaintiff from working around *dangerous* machinery or machinery in general.

Accordingly, as the Court has already found remand appropriate to remedy the error described *supra*, the ALJ shall, on remand, ensure that he specifies in both his assessment of plaintiff's RFC and his hypothetical questions to the vocational expert whether plaintiff is precluded from dangerous machinery or, rather, machinery in general.

**III.  Remand Is Required.**

The decision whether to remand for further proceedings or order an

20

immediate award of benefits is within the district court's discretion.
Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no
useful purpose would be served by further administrative proceedings, or
where the record has been fully developed, it is appropriate to exercise
this discretion to direct an immediate award of benefits.  *Id.* at 1179
("[T]he decision of whether to remand for further proceedings turns upon
the likely utility of such proceedings.").  However, where there are
outstanding issues that must be resolved before a determination of
disability can be made, and it is not clear from the record that the ALJ
would be required to find the claimant disabled if all the evidence were
properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity
to remedy the above-mentioned deficiencies and errors.  *See*, *e.g.*,
Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for
further proceedings is appropriate if enhancement of the record would be
useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)
(remand appropriate to remedy defects in the record).

///
///
///
///
///
///
///
///
///
///

21

1

**CONCLUSION**

2

3      Accordingly, for the reasons stated above, IT IS ORDERED that the

4  decision of the Commissioner is REVERSED, and this case is REMANDED for

5  further proceedings consistent with this Memorandum Opinion and Order.

6

7      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8  copies of this Memorandum Opinion and Order and the Judgment on counsel

9  for plaintiff and for defendant.

10

11      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13  DATED:  February 22, 2012

14

15                                          _____

16                                               MARGARET A. NAGLE
                                          UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28